UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RAMOS, | ) Civil No. 08-2129-WQH(WVG) |
| Plaintiff, | ) REPORT AND RECOMMENDATION<br>) GRANTING PLAINTIFF'S MOTION |
| v. | ) FOR SUMMARY JUDGMENT AND<br>) DENYING DEFENDANT'S MOTION |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security, | ) FOR SUMMARY JUDGMENT |
| Defendant. | ) (Doc. Nos. 12, 15) |

Plaintiff Maria Ramos (hereafter "Plaintiff"), filed a Complaint For Judicial Review And Remedy On Administrative Decision Under The Social Security Act [42 U.S.C. §405(g)]. Defendant Michael J. Astrue (hereafter "Defendant"), filed an Answer to the Complaint and the administrative record (hereafter "Tr."), pertaining to this case. Plaintiff has filed a Motion for Summary Judgment. Defendant has filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment.

The Court, having reviewed Plaintiff's Motion for Summary Judgment, Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Defendant's Cross-Motion for Summary Judgment and the

administrative record filed by Defendant, hereby finds that Plaintiff is entitled to the relief requested and therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED and Defendant's Motion for Summary Judgment be DENIED.

I

PROCEDURAL HISTORY

On January 22 and August 24, 2004, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she was disabled since July 7, 2003. (Tr. 274-279). The Commissioner of Social Security denied her applications and the Appeals Council remanded the case for a further hearing. (Tr. 163-164, 235-242, 259-262). On February 21 and 26, 2007, hearings were held at which Plaintiff appeared with counsel and testified before an Administrative Law Judge (hereafter "ALJ") (Tr. 117-162). On May 27, 2007, the ALJ found that Plaintiff was not disabled given her residual functional capacity for a reduced range of light work. (Tr. 16-31). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. (Tr. 4-8).

II

SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423 (a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382 (a). Both titles of the Act define "disability" as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id.  The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity."  If he is, disability benefits are denied. 20 C.F. R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case.  The severity regulation provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" [u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "[d]ealing with changes in a routine work setting." Id.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

# III

## ALJ'S FINDINGS

The ALJ made the following pertinent findings:

> 1. (Plaintiff) meets the insured status requirements of the Social Security Act through December 30, 2009.
>
> 2. (Plaintiff) engaged in substantial gainful activity in 2003 and for the first seven months of 2004. She has not engaged in substantial gainful activity since August 1, 2004.
>
> (Plaintiff's) 2003 earnings record reflects earnings from an electronics firm and self-employment income, and (Plaintiff) has acknowledged she worked for an electronics firm and as a self-employed baby sitter.
>
> According to (Plaintiff), she began babysitting in 2003 and babysat two boys, ages ten and seven. Although she could not remember the exact date she began babysitting, she recalled that she begun babysitting when she stopped working at the electronics company. She continued babysitting until sometime in July 2004, when the mother of the two boys sent the children to live with their grandmother in Alabama.
>
> 3. (Plaintiff) has had the following severe combination of impairments: a history of right shoulder impingement syndrome, status-post subacromial decompression surgery, and depressive disorder.
>
> These impairments, considered in combination, had more than a minimal effect on (Plaintiff's) ability to perform basic work-related activities.
>
> From a mental standpoint, (Plaintiff) had no more than mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining the concentration, persistence, or pace needed for simple repetitive tasks to detailed but non-complex tasks, and moderate-to-marked difficulties in maintaining the concentration, persistence, or pace needed for the performance of complex tasks. (Plaintiff) has one-to-two episodes of decompensation.
>
> 4. (Plaintiff) has not had an impairment or combination of impairments that meets or medically equals one the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> No physician has opined that (Plaintiff's) condition meets or equals any listing, and the State Agency physicians opined that it does not.

5. After careful consideration of the entire record, the undersigned finds that (Plaintiff) has had the residual functional capacity to do the following: lift up to ten pounds frequently; lift up to twenty pounds occasionally; sit for six hours in an eight-hour day; stand and/or walk for six hours in an eight-hour day; and perform simple repetitive work and detailed work without public contact. She should not engage in overhead reaching, pushing, or pulling with the right arm. Nor should she squat, crawl, or operate foot controls.

(Plaintiff) alleges disability commencing July 3, 2003, due to physical and mental limitations. Her former attorney argues that (Plaintiff's) medications slowed her thought processes and impaired her ability to concentrate. (Plaintiff's) former attorney further contended that (Plaintiff) was limited by chronic shoulder, neck, hip, and back pain as well as mental fatigue. According to her present attorney, (Plaintiff) has been limited to no more that sedentary work (i.e. lifting and carrying limited to ten pounds occasionally and less than ten pounds frequently, standing or walking for less than four hours in an eight-hour day in thirty-minute increments, and sitting for less than six hours in an eight-hour day in fifteen-minute increments.) (Plaintiff's) present attorney further argues that (Plaintiff) had additional non-exertional limitations due to depression.

After considering the evidence of record, the undersigned finds that (Plaintiff's) medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that (Plaintiff's) statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The undersigned, having considered all of the functional capacity assessments, finds that the above-adopted residual functional capacity most accurately represents (Plaintiff's) degree of limitation. The assessments of (doctors who opined as to Plaintiff's functional capacity) all allow for the performance of light work activity.

Turning to (Plaintiff's) mental capacity, (Plaintiff's) medical records show that (she) was treated for depression due to symptoms of depressed mood, depressed affect, tearfulness, diminished energy, and motivation, and feelings of hopelessness. However, her thought processes remained logical and she had no suicidal ideation. Prescription medications have varied and have included medications such as Prozac, Wellbutrin, Trazadone, Lorazepam, and Zoloft.

> (After) considering the (psychological assessments of Plaintiff), the undersigned finds the above-adopted residual functional capacity most accurately represents (Plaintiff's) limitations during the time period in issue.
>
> While the undersigned is sympathetic with the difficulties that (Plaintiff) has been experiencing, they do not support a conclusion of "disability" under the Act. The undersigned has considered (Plaintiff's) allegations of pain, excess pain, and limitations pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Ruling 96-7p, and the pertinent regulations. However, (Plaintiff's) allegations of disability are not credible to the extent alleged.
>
> 6. (Plaintiff) has been capable of performing her past relevant work as a certified nurse's assistant/escort, as actually performed, a children's monitor as actually performed, and an upholsterer sewer job as generally performed. These jobs do not require the performance of work-related activities precluded by (Plaintiff's) residual functional capacity.
>
> The vocational expert identified (Plaintiff's) past relevant work as follows: a certified nurses assistant/escort (DOT# 355.674-014), a semi-skilled occupation customarily performed at a medium exertional level but actually performed at a light exertional level; a stock clerk/parts and order clerk (DOT# 249.367-058), a semi-skilled occupation customarily performed at a light level of exertion; a housekeeper (DOT# 321.137-010), an unskilled occupation customarily performed at a light level of exertion; a housekeeping supervisor (DOT# 323.137-010), an occupation performed at a medium exertional level customarily skilled in nature but not actually performed as semi-skilled in nature; a babysitter/children's monitor (DOT# 301.677-010), semi-skilled occupation customarily performed at a medium exertional level and actually performed at a light exertional level; and an upholstery sewer/seamstress (Dot# 780.682-018) a semi-skilled occupation customarily performed at a light exertional level.
>
> When the vocational expert was posed with a hypothetical question considering (Plaintiff's) physical residual functional capacity as adopted above, she opined that (Plaintiff) could perform (her) past relevant work as a certified nurse's assistant/escort, as actually performed, a children's monitor as actually performed, and an upholsterer sewer job. When asked to consider a hypothetical individual with a physical residual functional capacity for light work

and a mental limitation restricting her to simple-repetitive-tasks and detailed tasks with no public contact, the vocational expert concluded the hypothetical individual would be able to perform the same past relevant work. She further testified that her opinions were consistent with the Dictionary of Occupational Titles.

7. (Plaintiff) has not been under a disability, as defined in the Social Security Act, from July 7, 2003 through the date of this decision.
(Tr. 22-31)(citations omitted).

## IV

## THE ALJ ERRED IN FINDING THAT PLAINTIFF COULD PERFORM HER PAST RELEVANT WORK BY RELYING ON VOCATIONAL EXPERT TESTIMONY WITHOUT ESTABLISHING THAT THE TESTIMONY WAS CONSISTENT WITH THE DICTIONARY OF OCCUPATIONAL TITLES

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform her past relevant work. Specifically, Plaintiff contends that the ALJ relied on expert vocational testimony regarding what jobs Plaintiff could perform, but did not establish that the evidence was consistent with the Dictionary of Occupational Titles (hereafter "DOT"). Defendant asserts that there was substantial evidence to support the ALJ's findings.

1. Past Relevant Work

The ALJ found that Plaintiff was capable of performing her past relevant work as a Nurse's Assistant, as actually performed, a Children's Monitor, as actually performed, and an Upholsterer Sewer job, as generally performed. However, the evidence in the record regarding these jobs is scant. Plaintiff reported that her previous job as a Nurse's Assistant consisted of helping patients make their beds, escorting patients to a room where they could eat their meals and escorting them back to their rooms, logging what patients ate, and helping pick up trash. (Tr. 44-45, 143-144, 310, 316). Plaintiff reported that her previous job as a Children's Monitor

consisted of watching two children, ages 7 and 10, feeding them pre-prepared food, and picking them up from school in her car and taking them to their home or her home. (Tr. 137, 141-143). Plaintiff merely reported that she previously held a job as a seamstress. However, no details about this job were presented. (Tr. 147). Here, the Court concludes that since the evidence of how Plaintiff actually performed the jobs of Nurse's Assistant and Child Monitor was sketchy at best, it can not conclude that Plaintiff was capable of performing these jobs as actually performed. Further, since no evidence was presented regarding the Upholsterer Sewer job, the Court cannot conclude that Plaintiff was capable of performing that job either.

      2. Vocational Expert Testimony

      The ALJ and Plaintiff's attorney asked the vocational expert several hypothetical questions regarding what jobs a person with Plaintiff's limitations could perform. (Tr. 151-161).

      If a claimant cannot return to her former job, the ALJ must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform, despite her identified limitations. A vocational expert witness may be required to identify jobs that match the abilities of the claimant, given her limitations. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)

      Social Security Ruling 00-4p (hereafter "SSR 00-4p") states in pertinent part that "(w)hen a (vocational expert)... provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that (vocational expert)... evidence and information provided in the (DOT)."(emphasis added)

SSR 00-4p further provides that the adjudicator **"*will ask*"** the vocational expert "if the evidence he or she has provided is consistent with the (DOT) and obtain a reasonable explanation for any apparent conflict." SSR 00-4p at *4 (emphasis added); <u>Massachi v. Astrue</u>, 486 F.3d 1149 (9th Cir. 2007).

An ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. <u>Johnson</u>, 60 F.3d at 1435.

> The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the (DOT)... (T)he Social Security Administration relies primarily on the (DOT) for 'information about the requirements of work in the national economy.' The Social Security Administration also uses testimony from vocational experts to obtain occupational evidence. Although evidence provided by a vocational expert 'generally should be consistent' with the (DOT), neither the (DOT) nor the (vocational expert)... evidence automatically 'trumps when there is a conflict.' *Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather that the (DOT).*

<u>Massachi</u>, 406 F.3d at 1153 (citations omitted)(emphasis added).

The ALJ found that Plaintiff had the residual functional capacity to do the following: lift up to ten pounds frequently; lift up to twenty pounds occasionally; sit for six hours in an eight-hour day; stand and/or walk for six hours in an eight-hour day; and perform simple repetitive work and detailed work without public contact. She should not engage in overhead reaching, pushing, or pulling with the right arm. Nor should she squat, crawl, or operate foot controls. Further, the ALJ found that Plaintiff had mild restriction in activities of daily living, mild difficulties in

maintaining social functioning, mild difficulties in maintaining the concentration, persistence, or pace needed for simple repetitive tasks to detailed but non-complex tasks, and moderate-to-marked difficulties in maintaining the concentration, persistence, or pace needed for the performance of complex tasks. The ALJ concluded that Plaintiff was capable of performing her past relevant work as a certified Nurse's Assistant, a Children's Monitor, and an Upholsterer Sewer. (Tr. 30). The ALJ stated that these jobs do not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

Nevertheless, the ALJ and Plaintiff's attorney questioned the vocational expert about what jobs a person with Plaintiff's limitations could perform. (Tr. 151-161).[1] Specifically, the ALJ asked whether a hypothetical individual could do her past relevant work if she had the limitations of ability to carry 20 pounds occasionally and ten pounds frequently, stand and walk six out of eight hours a day, no reaching overhead with the right extremity and occasional climbing. The Court notes that this hypothetical question reasonably included all of Plaintiff's *physical* limitations. The vocational expert responded to the hypothetical question that the hypothetical individual could perform the past relevant work of a nurse's assistant, and a children's monitor. (Tr. 151-152).

Thereafter, the ALJ asked the vocational expert whether the hypothetical individual noted above could do her past relevant work but also had a mild limitation in her ability to complete detailed tasks, moderate to complex tasks, and a mild limitation in interact-

---

[1] Some of the hypothetical questions asked by the ALJ and Plaintiff's attorney and the answers thereto are not entirely clear.

08cv2129

ing with peers. The Court notes that this hypothetical question reasonably included all of Plaintiff's *psychological* limitations. The vocational expert responded to the hypothetical question that the hypothetical individual could not perform her past relevant work. (Tr. 153).[2/]

Nonetheless, the ALJ concluded that Plaintiff could perform her past relevant work as a Nurse's Assistant, a Children's Monitor and an Upholsterer Sewer. Further, the vocational expert testified that her testimony regarding the jobs Plaintiff could perform were consistent with the DOT (Tr. 161). However, the Court's review of the DOT for these jobs shows that Plaintiff can not perform them.

### 1. Nurse's Assistant

The ALJ did not ask the vocational expert about any possible conflict between her testimony and the evidence provided by the DOT. Had the ALJ asked about a conflict, or reviewed the DOT's description of a Nurse's Assistant, she would have found that a Nurse's Assistant must exert 20 to 50 pounds of force occasionally and 10 to 25 pounds of force frequently. Additionally, the physical demand requirement for this job is in excess of light work. Further, the job requires that a Nurse's Assistant must perform effectively under stress and must reach frequently. (DOT 355.674-014). Therefore, Plaintiff would not be able to perform this job. As a result, there

---

[2/] The record reflects that the ALJ also asked the vocational expert if, given a hypothetical individual with all of Plaintiff's physical and psychological limitations, were there *other jobs* she could perform? The vocational expert responded by stating that the hypothetical individual could perform the work of a production inspector (DOT 669.687-014) and an assembler (DOT 715.687) (Tr. 153-154).
The Court notes that the ALJ asked the vocational expert several more hypothetical questions that did not completely address all of Plaintiff's physical and mental limitations. (Tr. 154-157). The Court also notes that Plaintiff's attorney asked the vocational expert a hypothetical question. However, the vocational expert's response to that question was unclear. (Tr. 157-161).

is a conflict between the vocational expert's testimony and the evidence provided by the DOT. The ALJ failed to discharge her duties pursuant to SSR 00-4p.

### 2. Child Monitor

The ALJ did not ask the vocational expert about any possible conflict between her testimony and the evidence provided by the DOT. Had the ALJ asked about a conflict, or reviewed the DOT's description of a Child Monitor, she would have found that a Child Monitor must exert 20 to 50 pounds of force occasionally and 10 to 25 pounds of force frequently. Further, the job requires that a Child Monitor must reach frequently. (DOT 301.677-010). Therefore, Plaintiff would not be able to perform this job. As a result, there is a conflict between the vocational expert's testimony and the evidence provided by the DOT. The ALJ failed to discharge her duties pursuant to SSR 00-4p.

### 3. Upholstery Sewer

The ALJ did not ask the vocational expert about any possible conflict between her testimony and the evidence provided by the DOT. Had the ALJ asked about a conflict, or reviewed the DOT's description of an Upholstery Sewer, she would have found that an Upholstery Sewer must exert 20 pounds of force occasionally and must reach constantly. (DOT 780.682-018). Therefore, Plaintiff would not be able to perform this job. As a result, there is a conflict between the vocational expert's testimony and the evidence provided by the DOT. The ALJ failed to discharge her duties pursuant to SSR 00-4p.[3]

---

[3] The Court notes that Plaintiff could not perform the *other jobs* that the vocational expert opined she could perform. A production inspector must reach frequently (continued)
(continued)
(DOT 669.687-014 Dowel Inspector). An assembler must reach constantly (DOT 715.687.010 Band Attacher). Therefore, Plaintiff would not be able

As a result, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED and Defendant's Motion for Summary Judgment be DENIED. Further, the Court RECOMMENDS that this case be REMANDED to the ALJ so that she can discharge her duties pursuant to SSR 00-4p.

## V

## CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED and Defendant's Motion for Summary Judgment be DENIED. Further, the Court RECOMMENDS that this case be REMANDED to the ALJ so that she can discharge her duties pursuant to SSR 00-4p.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than August 20, 2010, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than September 7, 2010. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst,

---

to perform these jobs.

1  951 F.2d 1153 (9th Cir. 1991).

4  DATED:   July 29, 2010

```
                                    _____
                                    Hon. William V. Gallo
                                    U.S. Magistrate Judge
```